## FIDELITY & DEPOSIT CO. v. VANCE et al.

No. 16105.   Opinion Filed Feb. 9, 1926.

Rehearing Denied April 13, 1926.

Ross & Thurman, for plaintiff in error.

Walter E. Latimer and Everest, Vaught & Brewer, for defendants in error.

ESTES, C. A. B. Vance and wife owned jointly a certain parcel of real estate in Military Park addition to Oklahoma City, subject to a valid mortgage thereon in favor of one Raemer for $2,000, and a valid lien for $127.24, in favor of a brick company for materials furnished. Vance, without being joined by his wife, executed a mortgage on the parcel of land to plaintiff in error, Fidelity & Deposit Company of Maryland, to secure $3,411.82, which he owed said surety company, this mortgage being duly filed for record, but not at the times herein referred to, being numerically indexed in the proper record, said mortgage covering only his one-half interest in such parcel of real estate. Prior to the beginning of this litigation, and subsequent to the filing of the said surety company's mortgage, Vance and his wife sold such parcel of real estate to defendants in error, Anna M. and Ed H. Kunz, wife and husband, conveying the title thereto to said wife. As a part of the same transaction, the Kunzes arranged with defendant in error Local Building & Loan Association to procure a loan of $2,-000, with the proceeds of which, and their own funds, they paid the Raemer mortgage and the lien for material and the balance of the purchase price, $3,700, to the creditors of Vance, the assumption of the Raemer mortgage and said lien being a part of said purchase price. The Vances furnished to the Kunzes an abstract of title, which was, by the latter, turned over to the attorneys for said loan company. In making said bargain, the Vances had represented to the Kunzes that there were no liens on such real estate, except said Raemer mortgage and lien for material. The abstract so showed, and the attorneys for the loan company rendered a written opinion to their company and to the Kunzes accordingly. The mortgage to the surety company was not shown in the abstract for the reason that same did not appear in the numerical index. Neither

the Kunzes nor the loan company had any actual knowledge thereof, but under the statutes of this state they did have constructive notice because the surety company's mortgage was duly filed with the proper officer for record. Accordingly, the loan company advanced the new loan, the Kunzes paid the Raemer mortgage, and the lien for material, procuring discharges of both by the proper recorded releases. accepted and recorded the deed to Mrs. Kunz from the Vances, and the loan company recorded its mortgage given to it by the Kunzes. It is unnecessary to relate the circumstances by which defendant in error, Lackey, initiated this action for foreclosure on other property and the issues not here involved, and in which the parties to this appeal were made defendants or brought into court. The issues joined by the parties to this appeal appear from the respective contentions and the findings of the court herein set out.

. In this action to foreclose, the Kunzes and the loan company pleaded and relied upon fraud and mutual mistake of fact, in that the Vances had orally and also by said abstract represented that there were no liens on said property, except said Raemer mortgage and lien for material, and that they had no actual knowledge of the surety company's mortgage which was filed. The court found that the Raemer mortgage and the lien for material should be revived in favor of Mrs. Kunz, as equitable. assignee thereof, and thus made prior to the mortgage of the bonding company, basing such conclusion on the proposition that the surety company would not sustain any injury or change in its pecuniary position occupied by it prior to such release of the Raemer mortgage and said lien. Accordingly, the court decreed a lien on the one-half interest of Vance in the realty to the surety company under its mortgage for $3,411.82, but subject and junior to the prior lien of the Kunzes on such one-half interest to secure $1,013.62, being one-half of their payments in discharging the Raemer mortgage and said lien. Accordingly, also, the decree validated the mortgage of the loan company as a first lien on the entire property, there being no question about its priority as to one-half thereof which had not been mortgaged to the surety company. The surety company appeals.

Did the court err in decreeing such revivor and subrogation in favor of the Kunzes?

1. In Kahn v. McConnell et al., 37 Okla. 219, 131 Pac. 682, it is held:

"When the vendee, in payment of the purchase price of real estate, pays indebtedness secured by a first mortgage, he is not subrogated to the lien of that mortgage as against a second mortgagee whose mortgage is duly recorded at the time of the purchase."

In the opinion it is said:

"The fact that he assumed the indebtedness to the bank and paid it did not give him the right of subrogation. In the matter of that payment, he was a volunteer. He was under no duty to buy the land. He was under no duty to pay the first mortgage. He was negligent in doing so without examining the records, and cannot escape the consequence of his own negligence by an appeal to the equitable doctrine of subrogation."

The opinion also quotes with approval the following from the Iowa court (Stastny v. Pease, 100 N. W. 482):

"The purchaser of real property has constructive notice of an existing judgment lien; and, where, by agreement with his grantor he discharges prior liens in part judgment of the purchase price, the judgment becomes a first lien upon the property, and neither the doctrine of equitable assignment nor subrogation applies."

Numerous authorities are cited thereto. In Kiniry v. Davis et al., 82 Okla. 211, 200 Pac. 439, the following from the New York Court is quoted with approval:

" 'It is only in cases where the person advancing money to pay the debt of a third person stands in the situation of a surety or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor. as a matter of course, without any argeement to that effect. In other cases, the demand of a creditor which is paid with the money of a third person and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person. is absolutely extinguished.' See Downer v. Miller, 15 Wis. 612."

The Kahn Case, supra, has been followed in Owen v. Interstate Mortgage Trust Co., 88 Okla. 10, 211 Pac. 87, and in other decisions of this court.

2, 3. It thus appears that this court is committed to the doctrine shown in the body of the opinion quoted above from the Kahn Case, that the vendee who assumes an incumbrance on real estate and pays the same, being under no duty to buy the land. is a volunteer and is not entitled to subrogation to the extent of such payment against a junior mortgagee of whose lien such vendee has constructive, though not actual, notice at the time of payment. A

sequent of this rule is that, although the vendor induces the sale by the fraudulent misrepresentation that no such junior mortgage existed, such junior mortgagee not being a party to such fraud does not, in equity, remove the bar to such vendee's right to subrogation. The language that it is only in cases where a person advances money to pay the debt of a third person, stands in the situation of surety, or is compelled to pay it to protest his own rights, is so broad, absolute, and sweeping, as to bar from the right of subrogation any claim thereto on the part of the purchaser, based on the fraud of his vendor in making the sale, as in the instant case. Such is the import of the decisions of this court generally. Nor, under such facts, may mutual mistake of fact be invoked by such purchaser to remove the bar. Not only is mistake barred by this rule, but there would be no mutuality, since both the Vances and the surety company knew the fact, although the Kunzes did not. The Kahn Case, supra, properly states that the rule is otherwise in Ohio and other jurisdictions. Capitol National Bank v. Holmes (Colo.) 95 Pac. 314, seems to predicate the grantee's right to subrogation, in such case, on the presumption that he paid the prior incumbrance for his own benefit. Other courts hold that, under such facts, the purchaser does pay the prior incumbrance to protect his own interest, and is therefore entitled to subrogation. Numerous able opinions have been written supporting said contrary view. However, we think the rule in this jurisdiction is more sound under the canons of logic when we consider the function of equity. Business expediency, no doubt, induced the Kunzes to purchase the real estate in question. The purchase was voluntary on their part and they agreed to pay the Raemer mortgage and the lien for material as a part of the consideration therefor. They did pay and absolutely discharged said liens. Equity is not concerned with their business welfare as such in this transaction. Had they been under some duty to purchase the real estate, then they might implore the strong and willing arm of equity to aid in its performance. As to the Vances, they owed the duty to pay such prior liens, subject to whatever rights they might have, and to be adjudicated against the Vances for the alleged fraud of the latter. Under the decisions of this court, equity cannot take cognizance of same, at this time, as against the surety company. They owed a duty to themselves, with which equity is not concerned, to pay the prior liens. The rights of lienors were fixed by law in the event the Kunzes did not so pay. As to the surety company, under its junior mortgage, the Kunzes owed no duty to pay the prior liens, because the surety company had taken its mortgage subject thereto. Wherefore, were not the Kunzes volunteers in so paying? Being volunteers, the Kunzes cannot, under the rules of equity, be subrogated. The presumption that they paid said prior incumbrance for their own benefit—responsive to a universal trait of human nature—is not impelling, since equity is impartial as between the pecuniary interests of both the Kunzes and the surety company, as junior mortgagee. When the surety company took its junior mortgage it knew that, in equity, if a volunteer paid such prior incumbrance, its mortgage would become a first lien. Equity accords this right to every junior incumbrancer. It is not based on any regard which equity has for the pecuniary interests of the junior mortgagee. Indeed, in order to realize under its junior lien, it would have to sell the property subject to the prior lien, if not due, or, if they were due, redeem from them, provided some volunteers did not pay such prior incumbrances. The courts holding to the contrary view seek to do evenhanded justice in those cases where the junior incumbrancer is not prejudiced. In doing so, they say that the Kunzes in the instant case were not volunteer payors of the Raemer mortgage and the lien for material. The reasons for such construction do not move us to change the established rule of this jurisdiction.

We make the foregoing observations because it is insisted that Foster v. Whitenton, 96 Okla. 187, 221 Pac. 52, supports such contrary view. Indeed, the language of the syllabus would so indicate that such view is recognized. If so, then that case, without seeming or specifically doing so, overrules the Kahn Case and all other decisions of this court. The Foster Case was a contest between two mortgagees—not between a purchaser and a mortgagee—not involving the question of a volunteer as purchaser of the property. As shown in that opinion, there are other grounds of distinction. It thus appears that, without regard to and irrespective of said contrary view, subrogation in that case should have been denied, as was done. The syllabus of that case is the substance of the syllabus in Borman v. Hatfield (Wash.) 164 Pac. 921, which court upholds said contrary view. The expressions therein consonant with such view be-

ing judicial dicta, the opinions of the writer and not necessary to a decision—the said Foster Case is hereby expressly overruled in so far as the same conflicts with the views herein expressed.

Let the judgment be reversed and the cause remanded for further proceedings not inconsistent herewith.

By the Court: It is so ordered.