## LANDIS v. STATE ex rel. COM'RS of the LAND OFFICE.

No. 27179. March 16, 1937.

Rehearing Denied April 6, 1937.

D. D. Brunson and Sigler & Jackson, for plaintiff in error.

Orlando F. Sweet and Everett H. Welborn, for defendant in error.

PER CURIAM. This action was instituted in the district court of Coal county by state of Oklahoma ex rel. Commissioners of the Land Office, hereinafter referred to as plaintiff, against Harry E. Landis, hereinafter referred to as defendant, to foreclose a mortgage lien on certain lands in said county. Plaintiff was granted judgment. Defendant, by his next friend, thereupon filed a petition and an amended petition to set such judgment aside. Defendant alleged that he was a congenital idiot and as such had at all times been without capacity to contract. That this condition was known to the plaintiff at the time of the execution and delivery of the notes and mortgage sued upon by the plaintiff, and that said notes and mortgage were not the acts and deed of said defendant but were forgeries. Plaintiff in its supplemental answer and cross-petition alleged that it had in good faith advanced $4,000 of the funds of the School Land Commission in payment of a prior valid mortgage lien on the lands involved, and that the notes and mortgage upon which it had brought suit had been accepted by it in the belief that they had been executed by the defendant and were for proper and valid obligations, and that if they were void as alleged by the defendant, then the plaintiff was entitled to be subrogated to the valid lien which it had discharged. Defendant in reply pleaded the statutes of limitations in bar. A jury was waived and the cause was tried to the court. At the trial the parties stipulated as follows:

"It is hereby stipulated and agreed by and between the parties hereto in open court, through their attorneys of record as follows: that on the first day of July, 1920, Claud Callaway and Willie Callaway were

the owners of the real estate herein involved, and that on the first day of July, 1920, said Claud Callaway and Willie Callaway made, executed and delivered their promissory note in the principal sum of $4,000, and as a part of the same transaction executed and delivered a mortgage covering said premises herein described, in favor of the Maxwell Investment Company of Kansas City, Missouri, said mortgage appearing of record in book 63, page 418-421 of Coal county Oklahoma, in the records of the county clerk of said county.

"That thereafter said note and real estate mortgage was regularly assigned by the Maxwell Investment Company of Kansas City, Missouri, to John Hancock Mutual Life Insurance Company of Boston, Massachusetts; said assignment appears of record in book 58 at page 460-461 in the records of the county clerk of Coal county, Oklahoma.

"It is further stipulated that thereafter the said Claude Callaway and Willie Callaway, conveyed the property herein involved to the defendant, Harry E. Landis, and at the time said conveyed (sic) was made the above described mortgage was a valid lien upon said real estate.

"That thereafter, on the 25th day of September, 1923, the state of Oklahoma, on relation of the Commissioners of the Land Office, received an application for a loan of $4,000; said application purporting to have been signed and acknowledged by the defendant, Harry E. Landis.

"That on the 4th day of December, 1932, the state of Oklahoma, on relation of the Commissioners of the Land Office upon said purported application loaned the sum of $4,000 secured by the real estate above described under a mortgage made to the Commissioners of the Land Office, due five years from date; said mortgage being filed for record in the office of the county clerk of Coal county, Oklahoma, on the 9th day of January, 1924, and recorded in book 78, at page 341-342 of said records.

"It is further stipulated and agreed that out of the proceeds of said loan as made by the state of Oklahoma under said purported application the sum of $4,000 was paid by a check dated July 1st, 1924, to the Southwestern Mortgage Company in settlement of the mortgage theretofore made to the Maxwell Investment Company and subsequently assigned to John Hancock Mutual Life Insurance Company above set forth.

"It is stipulated and agreed that at the time said $4,000 was paid by the state of Oklahoma as a settlement of said mortgage indebtedness as executed by them to the Maxwell Investment Company of Kansas City, Missouri, and subsequently assigned to the John Hancock Mutual Life Insurance Company, was a valid, subsisting and unsatisfied lien upon the real estate involved herein."

At the trial the defendant's stepfather testified that he had forged the defendant's name both to the application for the mortgage and to the notes and mortgage which had been delivered to the plaintiff. Defendant conclusively established the fact of his congenital idiocy. The court vacated its former judgment of January 28, 1929, and held that the plaintiff was entitled to have the lien of the prior mortgage reinstated and to be subrogated to all rights thereunder, and rendered judgment against the defendant for the amount sued for, and also a judgment foreclosing said mortgage lien and ordering the sale of the property therein described. Defendant appeals from the judgment and order overruling his motion for new trial. Defendant contends that the plaintiff was a mere volunteer when it paid off and discharged the former mortgage, and hence is not entitled to subrogation in any event. The defendant, however, further contends that if the plaintiff was ever entitled to subrogation, such right has long since been barred by laches and statute of limitations. In support of this contention defendant cites and relies upon Owen v. Interstate Mortgage Trust Co., 88 Okla. 10, 211 P. 87; Tynes v. Smith, 105 Okla. 100, 234 P. 637; Fidelity & Deposit Co. v. Vance, 135 Okla. 24, 245 P. 578; Kahn v. McConnell, 37 Okla. 219, 131 P. 682, 47 L. R. A. (N. S.) 1189; 60 C. J. pp. 807, 809; Bingham v. Walker Bros. Bankers (Utah) 283 P. 1055.

The doctrine of subrogation has long been an established branch of equity jurisprudence. Although originally it was limited in application to actions where the relation of principal and surety existed and to those cases involving conventional subrogation, the doctrine as now applied by most courts is broad enough to cover every instance where payment is made by any person other than a volunteer of a debt for which another is primarily liable and which in equity and good conscience should be discharged by another. The authorities are in conflict upon the right of one lending money upon the security of a forged or unauthorized mortgage to be subrogated to the lien of the prior mortgage which has been discharged by the money advanced upon the void mortgage. However, a majority in number, and in our opinion the better reasoned cases, hold that one lending money upon the security of a void mortgage is entitled to be subrogated to the rights of the mortgagee under the prior valid mortgage which has been discharged with proceeds of the void one. See Newcomer v. Sibon, 119 Kan. 358, 239 P. 1110, 43 A. L. R. 1387, and the cases in the

notes to the A. L. R. citation, supra. While the mere loan of money for the purpose of enabling the borrower to pay a debt will not entitle the lender to be subrogated to the right of the creditor whose debt was thus paid (Employers Bldg. & Loan Ass'n v. Crafton, 63 Okla. 215, 164 P. 473; Johnson v. Gillett, 66 Okla. 308, 168 P. 1031), this rule does not apply where one lends money upon real estate security for the express purpose of paying incumbrances on the same property, believing in good faith that his security will of record be substituted in place of that which he discharges. As said in the case of Katter v. Rodgers, 107 Okla. 116, 230 P. 500:

"Where money is advanced on defective security for the purpose of paying off a prior incumbrance, and where the person advancing the money expected to get good security therefor, the person advancing the money is not a volunteer, and in the absence of intervening equities he will be held to be subrogated to the lien which the money advanced is used to pay."

The cases above cited by the defendant are not in conflict with the rule above announced, but upon examination are shown to be clearly distinguishable both upon the facts and the principle involved. As has been further said by this court in Richardson v. American Surety Co., 97 Okla. 264, 223 P. 389:

"The principle to be derived from the doctrine of subrogation is that it is born of equity and results from the natural justice of placing the burden where it ought to rest. It does not flow from any fixed rule of law, but rather from principles of justice, equity, and benevolence. It is a purely equitable result, depending like other equitable doctrines upon the facts and circumstances of each particular case to call it forth. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him, who in good conscience ought to pay it.

"No doctrine of equity jurisprudence is more beneficent in its operation than is subrogation, and perhaps none stands in higher favor. No general rule can be laid down, which will afford a test in all cases for its application, and its exercise depends upon the particular facts and circumstances of each case, and is not enforced as a matter of legal right, but in order to subserve the ends of justice in the particular controversy under consideration."

In view of the stipulation of the parties and the record in this case, we are of the opinion, and so hold, that under the circumstances shown plaintiff was not a volunteer in the payment of the Callaway mortgage, and that, therefore, it was entitled to subrogation thereto when it developed that plaintiff had been induced to accept a void mortgage as security for the discharge of the prior valid one. See, also, Watson v. Butler (McCree v. Local Bldg. & Loan Ass'n), 170 Okla. 350, 40 P. (2d) 653. There was no error granting the plaintiff subrogation.

This brings us to the next contention of the defendant, which is that the right to subrogation, if originally existing, was barred by laches and statute of limitations. While the defendant alleged in his petition that the plaintiff knew of his idiocy and mental incompetency at the time of the execution of the notes and mortgage originally sued upon, there was no evidence to this effect. On the contrary, it appears that the first notice that the plaintiff had of any defect in its mortgage was imparted when the defendant filed his first petition to vacate the judgment which the plaintiff had obtained in foreclosure under its original petition. Under the circumstances we think that the rule has been very aptly stated in the case of Zinkeison v. Lewis, 63 Kan. 590, 66 P. 644:

"Where money is so fraudulently obtained and used at the instance of the mortgagors to pay off prior valid liens, such liens will be considered to be alive so long as equity and the rights of the parties require; and the holder of the defective mortgage, who had no notice of the fraud or defect until the answers of the mortgagors were filed in a foreclosure action, is not barred by the statute of limitations from asking subrogation to the prior liens, although more than five years have elapsed since they were paid off and discharged."

An examination of the entire record in this case reveals a shocking attempt to rob the state of trust funds of a most sacred character, and that the defendant is a mere helpless pawn in the scheme and was used to further the ulterior purpose of others, and that save for error in rendering a personal judgment against the defendant, the findings and judgment of the trial court were correct. Since the personal judgment against the defendant is separable and does not affect the remainder of the judgment, this court will modify said judgment by striking therefrom the personal judgment rendered against the defendant Harry E. Landis, and as thus modified said judgment will be and is hereby in all things affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.