BOURQUIN v. FELAND et al.

No. 30187.   Sept. 23, 1941.

Rehearing Denied Oct. 7, 1941.

Application for Leave to File Second Petition for Rehearing Denied Oct. 21, 1941.

*117 P. 2d 789.*

Purman Wilson, of Purcell, for plaintiff in error.

Melton, McElroy & Vaughn, of Chickasha, for defendant in error Tom P. Farmer.

GIBSON, J. This action was commenced in district court by J. A. Bourquin, the plaintiff in error, against John R. Feland, Tom P. Farmer, and others to recover on a promissory note and to foreclose the mortgage security.

Feland was the mortgagor, and Farmer claimed title to the premises by virtue of a sheriff's deed given pursuant to sale on execution of an alleged prior judgment against Feland. In his cross-petition Farmer sought to quiet title under said deed. Judgment was entered quieting title in Farmer as against plaintiff and all other parties to the action, and plaintiff appeals.

The principal question for determination is that of superiority as between plaintiff's mortgage lien and Farmer's judgment lien under which he claims title by sheriff's deed on execution.

In answer to Farmer's cross-petition plaintiff pleaded subrogation to the rights of a former mortgagee whose lien was superior to the judgment, alleging that his loan to Feland for which the mortgage was given to secure was made for the express purpose of paying off the former mortgage.

The evidence shows that the Commissioners of the Land Office of the State of Oklahoma held a mortgage on the premises to secure a loan to Feland in the sum of $4,000. While the mortgage was of record in Grady county and the loan outstanding, Middlebury College, a corporation, obtained in the district court of Grady county a personal judgment against Feland for the sum of $8,753.22. That judgment was duly entered and recorded February 9, 1935. Subsequently, May 25, 1938, Feland executed to plaintiff the mortgage here sued upon. It was filed for record May 28, 1938. Thereafter, August 30, 1938, Farmer took an assignment of the Middlebury College judgment.

Prior to the execution of the mortgage to plaintiff, the Commissioners of the Land Office had commenced suit to foreclose their mortgage. The Middlebury College was made a party to the action. On May 26, 1938, Feland paid off the commissioners' mortgage with the money received from plaintiff. The suit was dismussed June 16, 1938, and the mortgage released of record May 1, 1939.

When Farmer obtained the assignment of the judgment he knew that the former mortgage had been superior to the judgment and that the same had been discharged by payment, and that plaintiff's mortgage was on record.

Plaintiff testified that he knew nothing of the judgment against Feland; that on Feland's request he let him have the money, $6,000, to take up the loan of the Commissioners of the Land Office; that his loan was made on Feland's representation that he was about to lose his property, and that he took a lien on the land in controversy.

Feland testified that he applied to plaintiff for a loan to pay off the commissioners' mortgage, stating to plaintiff that the mortgage was being foreclosed, and that plaintiff's mortgage would be a first lien on the land; that plaintiff let him have $6,000, which was used immediately to pay off the prior mortgage.

Farmer says the above facts show that the plaintiff was nothing more than a volunteer, without interest of any kind to protect, and was therefore not entitled to have himself subrogated to the rights of the first mortgagee. He relies mainly on Owen v. Interstate Mortgage Trust Co., 88 Okla. 10, 211 P. 87, wherein it was held as follows:

"One who, having no interest to protect, voluntarily loans money to a mortgagor for the purpose of satisfying and

canceling a prior mortgage, taking a new mortgage for his own security, cannot have the former mortgage revived and himself subrogated to the rights of the mortgagee thereon where he has failed to take an assignment of the prior mortgage and has voluntarily paid and discharged the same of record."

But a party who pays off an incumbrance for another, or furnishes the money for that purpose, is not always a mere volunteer. If such payment is made at the request of the debtor, he is not a volunteer, and certain equitable rights will accrue to him. 25 R. C. L. 1326. With respect to subrogation in cases of this character, we held in Landis v. State ex rel. Commissioners of the Land Office, 179 Okla. 547, 66 P. 2d 519, as follows:

"One who lends money upon real estate security for the express purpose of paying off an incumbrance upon the same property, believing in good faith that his security will be substituted of record for that discharged, is not a volunteer or intermeddler, and upon failure to obtain a valid lien is entitled to be subrogated to the prior valid lien to the extent of incumbrances which he has discharged."

And the same rule is applied in Home Owners' Loan Corporation v. Parker, 181 Okla. 234, 73 P. 2d 170. It was further held in the latter case that subrogation should always be granted when to do so will be to promote justice and to do equity and when the legal and equitable rights of others will not thereby be infringed. In Katter v. Rodgers, 107 Okla. 116, 230 P. 500, we find the following rule stated:

"Where money is advanced on defective security for the purpose of paying off a prior incumbrance, and where the person advancing the money expected to get good security therefor, the person advancing the money is not a volunteer, and in the absnce of intervening equities he will be held to be subrogated to the lien which the money advanced is used to pay."

The evidence shows that the plaintiff was not a mere volunteer. Feland, the debtor, requested him to advance the money to pay off the prior mortgage, and assured him that his own mortgage given to secure the sum advanced would be a first lien on the premises. It is clear that the plaintiff expected his mortgage to be a first lien. This is amply sufficient to entitle plaintiff to subrogation to the commissioners' mortgage, unless the assignment of the judgment of the Middlebury College intervened as an equity to defeat subrogation. Subrogation depends upon the respective equities of the parties concerned. As said in 60 C. J. 809:

"Where it is equitable that a person furnishing money to pay a debt of another should be substituted for the creditor or in the place of the creditor, such person will be so subrogated."

While it is held in some jurisdictions that the rights accruing to a party by subrogation are superior to all those inferior to the incumbrance paid by him (60 C. J. 809), we have recognized the rule that intervening equities might arise to defeat subrogation. Katter v. Rodgers, supra.

Had the judgment still remained the property of Middlebury College, the rights of plaintiff to subrogation would not have been affected thereby, for, from the standpoint of security, the judgment creditor's position would have been unchanged by the substitution of first liens. If the lien of the first mortgage had been fully discharged of record, and Farmer had been unaware of any transaction between Feland and plaintiff, it is probable that his purchase of the judgment in good faith would have constituted an intervening equity. With regard to the rights of bona fide purchasers, judgments are placed in the same category as choses in action by most courts. 34 C. J. 649, § 998. The weight of authority is that an assignee of a chose in action who takes without notice of latent equities of third parties acquired priority over such equities.

But Farmer purchased the judgment before the commissioners' mortgage was released and after plaintiff's mortgage appeared of record. It is true that Feland had remitted to the commissioners

501

the amount due, but they had not relinquished legal title to the mortgage. Under these circumstances Farmer had no right to assume that the first lien had been fully discharged and the land left free for the judgment lien to attach. All these things Farmer knew. The known conditions were clearly indicative of substituted liens and latent equities, and sufficient to put Farmer on notice. The sum named in plaintiff's mortgage was approximately the same as that paid by Feland to the commissioners; the first mortgage had not been released until after plaintiff's mortgage appeared of record. On the surface, the whole transaction had all the earmarks of a completed arrangement to substitute liens, and, as a matter of law, was of such a nature as to put Farmer on inquiry. He acquired no greater right under the judgment than his assignor held thereunder.

Since the uncontradicted evidence shows a valid substitution of plaintiff's mortgage for the mortgage of the Commissioners of the Land Office, and that Farmer knew, or should have known, of such substitution, the judgment is reversed insofar as it would decree title in Farmer superior to the plaintiff's mortgage, and the cause remanded, with directions to foreclose plaintiff's mortgage as a first and prior lien on the premises.

WELCH, C. J., CORN, V. C. J., and OSBORN and DAVISON, JJ., concur.