FILED
United States Court of Appeals
Tenth Circuit

**January 24, 2008**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| IN RE: RUSSELL T. HARPER and SHANNON C. HARPER, Debtors. | |
| ----------------------------- | No. 07-5016 |
| PATRICK J. MALLOY, III, Trustee, Plaintiff - Appellee, | |
| v. | |
| WILSERV CREDIT UNION, Defendant - Appellant. | |
| ----------------------------- | |
| OKLAHOMA CREDIT UNION LEAGUE; OKLAHOMA BANKERS' ASSOCIATION, Amici Curiae. | |

**APPEAL FROM THE UNITED STATES BANKRUPTCY
APPELLATE PANEL
(BAP No. 06–076)**

Patrick Malloy, III, Trustee, of Malloy Law Firm, P.C., Tulsa, Oklahoma, for
Plaintiff - Appellee.

David Wheeler of Butler & Wheeler, P.L.L.C., Jenks, Oklahoma, for Defendant -

Appellant.

Jason C. Boesch, Counsel for Amici Curiae, and Alvin C. Harrell, Professor of Law of Oklahoma City University School of Law, Oklahoma City, Oklahoma, for Amici - Curiae.

---

Before **KELLY**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendant-Appellant, WilServ Credit Union ("credit union"), appeals from an order and judgment of the Bankruptcy Appellate Panel ("BAP") affirming the judgment of the bankruptcy court. In re Harper, No. 06-076, 2007 WL 45918 (10th Cir. BAP Jan. 9, 2007). The bankruptcy court entered judgment in favor of Plaintiff-Appellee, Patrick J. Malloy, III, the chapter 7 trustee ("trustee"), avoiding the credit union's security interest in the debtors' truck pursuant to 11 U.S.C. § 544. Under § 544(a)(1), the trustee has the status of a hypothetical lien creditor once the bankruptcy petition is filed, and may avoid security interests that are unperfected under applicable law. In re Hicks, 491 F.3d 1136, 1140 (10th Cir. 2007); Okla. Stat. tit. 12A, § 1-9-317(a)(2). Our jurisdiction arises under 28 U.S.C. § 158(d)(1), and we affirm.

## Background

On September 1, 2001, the debtors purchased a truck from a dealer that

- 2 -

financed the $28,589 purchase price plus a $10 fee. Aplt. App. 76, 106. The dealer assigned the purchase contract to a finance company. Aplt. App. 76. The Muscogee (Creek) Nation ("Nation") apparently issued a title on October 5, 2001. Aplt. App. 10.

Over six weeks after the purchase (October 18, 2001), debtors obtained a $28,611.93 loan from the credit union. Aplt. App. 76. The debtors granted the credit union a security interest in the truck and used the proceeds to pay off the finance company and for a lien filing fee. Aplt. App. 52, 77. The parties stipulated that the credit union had a valid security interest in the truck. Aplt. App. 50. On December 13, 2001, the credit union filed a lien entry form with the Nation Tax Commission, which recorded the credit union lien on the title. Aplt. App. 10, 54. No lien entry form was filed with the Oklahoma Tax Commission. Aplt. App. 50. Nor is there any evidence that a financing statement was ever filed. Aplt. App. 93.

The parties stipulated that the debtors did not live in Indian country. Aplt. App. 51. They further stipulated that the truck was properly registered pursuant to the Nation code. Aplt. App. 51; Muscogee (Creek) Nation Stat. tit., 36, § 3-103. Eligibility for registration merely requires a person to be an enrolled member in the Nation and to reside within its political jurisdiction. Muscogee (Creek) Nation Stat. tit. 36, §§ 3-102(B); 3-103(C); 3(105)(A)(3). Debtors filed their chapter 7 petition on May 27, 2005, listing the truck as an asset of the estate.

The bankruptcy trustee commenced an adversary proceeding against the credit union on the theory that the credit union's lien was avoidable as unperfected under Oklahoma law. 11 U.S.C. § 544(a).

The bankruptcy court and the BAP agreed. Both recognized the general choice-of-law rule that the local law of the jurisdiction where the debtor is located, here Oklahoma, governs perfection and priority of a non-possessory security interest.[1] Okla. Stat. tit. 12A, §§ 1-9-301(1); 1-9-307(b)(1); Aplt. App. 82-83, 137. However, where goods are covered by a certificate of title, the local law of the issuing jurisdiction applies to perfection and priority. Okla. Stat. tit. 12A, § 1-9-303(c). Article 9 recognizes that perfection may occur with reference to a local certificate-of-title statute. Okla. Stat. tit. 12A, § 1-9-311(a)(2), (3). For example, perfecting a security interest in a certificate of title issued by the Oklahoma Tax Commission requires delivery of a lien entry form, a certificate of title or application and the required fee: thereafter, the lien will be noted on face of the certificate of title. Okla. Stat. tit. 47, § 1110(a)(1), (7); tit. 12A, § 1-9-303(b). Article 9 of the Oklahoma Uniform Commercial Code (UCC) provides priority rules. Okla. Stat. tit. 12A, §§ 1-9-317, 1-9-322.

Section 1-9-303(c) suggests that the local law of the issuing jurisdiction, the Muscogee (Creek) Nation ought to apply to perfection and priority of the

---

[1] No one has argued that the law of the Muscogee (Creek) Nation is the local law of the jurisdiction.

underlying security interest.  But for § 1-9-303(c) to be applicable, there must be

a "certificate of title" as that term is defined in the UCC:

> "Certificate of title" means a certificate of title with respect to which
> a statute provides for the security interest in question to be indicated
> on the certificate *as a condition or result* of the security interest's
> obtaining priority over the rights of a lien creditor with respect to the
> collateral.

Okla. Stat. tit. 12A, § 1-9-102(a)(10) (emphasis added).  Both the bankruptcy

court and the BAP held that the title at issue could not qualify as a "certificate of

title" because no Nation statute or law addressed perfection or priority vis-a-vis

noting the security interest on the certificate of title.  In the words of the

bankruptcy court:

> The Creek Motor Vehicle Registration statute does not provide (or
> even suggest) that noting the lien on the certificate of title issued by
> the Creek Nation *is a condition* to the lien holder obtaining priority
> over a lien creditor, or that noting the lien *results* in a priority over a
> lien creditor.

Aplt. App. 84-85.  Similarly, the BAP noted the absence of "any applicable

Muscogee Nation law providing for the perfection or priority of a lien on a motor

vehicle."  Aplt. App. 139.

Thus, it was necessary to resort to other Oklahoma law concerning

perfection and priority as the debtors resided in Glenpool, Oklahoma.  Okla. Stat.

tit. 12A, §§ 1-9-301(1); 1-9-307(b)(1).  After rejecting numerous possible

exceptions to a creditor filing a financing statement as a means of perfection, both

the bankruptcy court and the BAP concluded that a financing statement would

have been necessary, and none was filed.  Okla. Stat. tit. 12A, § 1-9-310(a); Aplt.

App. 93-94, 139.  The exceptions include:

- Okla. Stat. tit. 12A , § 1-9-311(a)(3).[2]  Ordinarily, filing a financing

    statement would not be necessary or effective to perfect a security

    interest given a lien noted on a certificate of title from another

    jurisdiction.   But this provision did not apply because the title in this

    case could not be considered a certificate of title as defined by the

    Oklahoma UCC.  Aplt. App. 86-87, 138.

- Okla. Stat. tit. 12A, § 1-9-311(a)(4)[3] as amended and effective May

---

[2] Filing of a financing statement is not required to perfect a security interest in property subject to:

> a certificate-of-title statute of another jurisdiction which provides for a security interest to be indicated on the certificate as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the property.

Okla. Stat. tit. 12A, § 1-9-311(a)(3).

[3] Filing of a financing statement also is not required to perfect a security interest in property subject to:

> the law or procedure of a federally recognized Indian tribe, if the security interest is in a vehicle registered or to be registered by the federally recognized Indian tribe and if within thirty (30) days after the security interest attaches, it is noted on the face of a certificate of title issued by the Indian tribe or, notwithstanding subsection G of Section 1110 of Title 47 of the Oklahoma Statutes, the security interest is otherwise perfected under an applicable law or procedure of that tribe.

- 6 -

5, 2005. This section provides that filing a financing statement generally will not be necessary or effective given a lien noted on a tribal title. It further provides that filing a financing statement is not required to perfect a security interest where a security interest is noted on the face of a title issued by a federally-recognized tribe within 30 days after the security interest attaches. Id. It is undisputed that more than 30 days intervened between attachment and the notation of the lien on the title at issue. Aplt. App. 87, 138-39. Section 1-9-311(a)(4) also dispenses with the requirement of filing a financing statement if "the security interest is otherwise perfected under an applicable law or procedure of that tribe," id., but both courts concluded that no tribal law or procedure addressed a perfection scheme.[4] Aplt. App. 87-88; 138-39.

- Okla. Stat. tit. 47, § 1110(A)(1), a certificate-of-title statute which excepts "a vehicle registered by a federally recognized Indian tribe as provided in [§ 1110(G)]" from the requirement that the secured party deliver the requisite documents and fee to the Oklahoma Tax Commission in order to perfect. Subsection 1110(G) provides: "A

---

Okla. Stat. tit. 12A, § 1-9-311(a)(4).

[4] Ultimately, the bankruptcy court concluded that § 1-9-311(a)(4) as amended in 2005 would not be retroactive. Aplt. App. 89-92.

security interest in vehicles registered by a federally recognized Indian tribe shall be deemed valid under Oklahoma law if validly perfected under the applicable tribal law and the lien is noted on the face of the tribal certificate of title." These provisions were effective April 13, 2004. Regardless of whether these provisions are retroactive, the BAP determined that they would not apply because no Nation law dealt with perfection of vehicle liens. Aplt. App. 140.

- Okla. Stat. tit. 12A, § 1-9-309(1). Both courts concluded that the credit union could not rely upon automatic perfection for a purchase money security interest (PMSI) to prevail over the trustee's lien. Aplt. App. 91-92; 140. The refinancing in this case (by a different creditor) could not be viewed as a PMSI because it did not secure a purchase money obligation incurred with respect to the truck and did not allow the debtors to obtain rights or use of the collateral. Okla. Stat. tit. 12A, § 1-9-103(a)(1), (2).

- Okla. Stat. tit., 42, § 19(2). Both courts rejected statutory subrogation (that would enable the credit union to attain the status vis-a-vis perfection of the prior lienholder) because the credit union lacked an inferior lien on the vehicle when it advanced the funds to the debtors who then paid off the prior lienholder. Aplt. App. 122-23; 6.

- Equitable subrogation. Both courts rejected equitable subrogation because no evidence suggested the credit union had been somehow deceived concerning the validity of its security interest, and therefore should have been placed in the position of the prior lienholder. Aplt. App. 125-130; 140-41.

On appeal, the credit union argues that both the bankruptcy court and the BAP erred in determining that: (1) this case was not governed by Okla. Stat. Ann. tit. 47, § 1110(A)(1) & (G), providing that Oklahoma will recognize a security interest in a vehicle if validly created by tribal law and noted on the title, and by caselaw recognizing Indian title and registration authority, (2) the tribal title was not a certificate of title under the UCC, (3) the credit union did not have a PMSI in which it could assert priority, and (4) the credit union could not assert any lien priority of the previous lender via statutory or equitable subrogation.

## Discussion

We review a BAP decision by independently evaluating the bankruptcy court's judgment. In re Mersmann, –F.3d– , 2007 WL 2833218, at * 4 (10th Cir. Sept. 24, 2007). As the contentions all involve legal questions, our review is de novo. Id.

A. Recognition of Tribal Titles and Okla. Stat. tit. 47, § 1110(A)(1), G, and tit. 12A, § 1-9-311(a)(4) Do Not Govern Perfection In This Case.

The credit union first argues that Oklahoma has little choice but to recognize the validity of Indian titles and liens given federal caselaw and recent Oklahoma statutory amendments. In particular, the credit union relies upon Prairie Band Potawatomi Nation v. Wagnon, 402 F.3d 1015 (10th Cir.), vacated 546 U.S. 1072 (2005), and Okla. Stat. tit. 47, § 1110(A)(1), (G) and tit. 12A, § 1-9-311(a)(4).

Prairie Band affirmed a permanent injunction against enforcement of certain Kansas motor vehicle laws against tribal members having tribal registrations and titles and venturing off the reservation. Kansas recognized registrations and titles from other states that reciprocated, but did not recognize those of the tribe. The panel majority viewed the case as involving federal preemption and Indian sovereignty requiring balancing of federal and tribal interests against those of the state. 402 F.3d at 1024-25. A concurring opinion would have resolved the case on the basis that the Kansas policy at issue was impermissibly discriminatory. 402 F.3d 1030-31 (McConnell, J., concurring). The Supreme Court vacated the judgment and remanded for consideration in light of Wagnon v. Prairie Band Potawatomi Nation, 546 U.S. 95 (2005). On remand, the court viewed the state's rationale (safety standards) for refusing to recognize Indian titles and registrations as impermissibly discriminatory, while noting that

such tribal regulation was an incident of tribal sovereignty. Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 827 (10th Cir. 2007). Prarie Band simply does not address what this case turns on: whether the mere notation of a lien on an Indian title is sufficient to perfect absent some type of perfection procedure and priority scheme.

The credit union argues that this case should be decided on the basis of Okla. Stat. Ann. tit. 47, § 1110(A)(1) and (G). As noted, these sections except vehicles registered by a federally-recognized Indian tribe from the procedures required by the Oklahoma Tax Commission to perfect and provide that such security interests "shall be deemed valid under Oklahoma law if validly perfected under the applicable tribal law and the lien is noted on the face of the tribal certificate of title." Id. The trustee argues that these provisions conflict with Okla. Tax Comm'n v. Sac & Fox Nation, 508 U.S. 114 (1993), which held in part, on preemption grounds, that Oklahoma could not impose its motor vehicle excise tax and registration fees on tribal members who live in Indian country. According to the trustee, the significance of this ruling is that Oklahoma retains jurisdiction to impose such fees on tribal members who do not live in Indian country and is not required to recognize tribal law concerning the perfection of liens in those circumstances. One obvious problem with this interpretation is that Oklahoma apparently has chosen to recognize such tribal law, at least within the terms of the statute. The trustee also argues that the amended provision violates the Oklahoma

- 11 -

Constitution which prohibits the state legislature from passing a law exempting property within the state from taxation. Okla. Const. art. V, § 50. This argument does not appear to have been raised below.

The trustee further argues these provisions represent substantive changes in the law that may be applied prospectively only, and not to the security interest in this case which was created some two-and-a-half years before their enactment. The credit union responds that the provision merely codified existing law, and that no retrospective application is required because the trustee's rights in this matter arose on May 27, 2005, upon the debtors' filing of the bankruptcy petition. Amici take the position that § 1110(A)(1) and (G) deal with Oklahoma certificate of title law, and have no applicability to the perfection of a security interest under the certificate of title law under another jurisdiction. Amici Br. at 2, 14 (because there has been no application for an Oklahoma certificate of title, § 1110 does not apply to this case).

We need not address these interesting arguments because we hold that, regardless, the pertinent section of §1110(G) does not apply in the absence of a security interest that is "validly perfected under the applicable tribal law." Okla. Stat. tit. 47 § 1110(G). As we discuss below, the Nation has no applicable law concerning the creation and perfection of security interests in vehicles. The credit union notes that § 1110(G) merely requires "tribal law" concerning perfection, not necessarily a statute, as is required by the Oklahoma UCC

definition of "certificate of title."  Okla. Stat. Ann. tit. 12A, § 1-9-102(10).  The parties have alerted us to no such law–we reject the arguments that (a) tribal statutory authority merely allowing for notation of a lien, (b) the title form itself or (c) a general right to go to tribal court would substitute for tribal law concerning perfection.

The credit union also relies on Okla. Stat. Ann. tit. 12A, § 1-9-311(a)(4) as amended May 5, 2005.  As noted, that section provides that filing a financing statement is not required if the security interest is noted on a tribal title within 30 days after attachment, or "otherwise perfected under an applicable law or procedure of that tribe."  We need not resolve whether the statute is prospective only–plainly the credit union could not satisfy the 30-day requirement, and for reasons similar to the above we hold that no applicable law or procedure concerning perfection exists under tribal law.

B.  The Tribal Title is Not a Certificate of Title Under the UCC

As noted, under the UCC a "certificate of title" requires a statute providing for lien notation on the title *as a condition or result* of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral. To fulfill this requirement, the credit union urges us to look at the Nation title which has a place for lien notation:

*1st Lien: Date:          Time:          Name:*

*2nd Lien:*

Aplt. App. 10. It also urges consideration of several statutes:

- Muscogee (Creek) Nation Stat. tit. 36, § 3-104(B) concerning the issuance of titles: "Notice of liens against said vehicle shall be placed upon said title upon request of the lending institution."

- Muscogee (Creek) Nation Stat. tit. 27, § 4-101 providing that a creditor who desires "to repossess any personal property . . . from a person within the jurisdiction of the Muscogee Nation, unless such repossession is with the written consent of the resident-debtor, must file a complaint in District Court."

- Muscogee (Creek) Nation Stat. tit. 24, § 7-405(C) providing that "[l]iens have priority according to the time of their creation, so long as the instruments creating the liens are duly recorded, and unless otherwise accorded a different status under the Nation's law.

Finally, the credit union argues that whether the tribal title is a "certificate of title" under the UCC ought to be evaluated like "substantial compliance" regarding a financing statement. See Okla. Stat. tit. 12A, § 1-9-506(a). According to the credit union, the trustee's avoidance powers should not be exercised where any potential creditor or purchaser of the vehicle would have discovered the lien (just as the trustee did). Amici point out that in most

- 14 -

circumstances UCC Article 9 provides priority provisions[5] and argues that it would be a mistake to require certificate of title law to contain priority provisions–all that is required of the Nation's certificate of title statute is a perfection mechanism. Amici Br. 4-7. According to amici, a look at tribal "common law" would be required concerning priority. Amici Br. 11, 14-15.

We are not persuaded by the credit union's arguments. As for the argument of amici, we do not require that Nation certificate-of-title law be the exclusive source of establishing perfection and priority. But here there is too little to go on. The language contained in the title for identifying a first and second lienholder cannot substitute for some Nation law concerning the legal effect of such identification. The Nation statute allowing for lien notation at the request of a lending institution, Muscogee (Creek) Nation Stat. tit. 36, § 3-104(B), never mentions the word "perfection" let alone indicates that lien notation is required to perfect a security interest in a vehicle. Nor is there any indication of whether perfection occurs upon application for a title or when the application is issued noting the lien. The statute concerning repossession deals with a remedy, Muscogee (Creek) Nation Stat. tit. 27, § 4-101, not the legal effect of lien notation and the consequences of perfection, i.e., priority. Finally, the first-in-time, first-in-right rule appearing in Muscogee (Creek) Nation Stat. tit. 24, § 7-

---

[5] At oral argument, we were informed that the Nation had not adopted the UCC.

405(C), is part of lien procedures applicable to housing and mortgage foreclosure and eviction. We agree with the other courts that it does not apply.

As for the suggestion that the above should suffice for "substantial compliance" with the UCC title definition provision, we must reject it. In a different context, where a lessor was identified as the owner (rather than a lienholder) on certificates of title, the Tenth Circuit held that Kansas would adopt a substantial compliance standard vis-a-vis certificates of title. In re Charles, 323 F.3d 841, 846 (10th Cir. 2003). Integral to the holding was that notice was provided to third parties of an interest claimed by the lessor given that the lessor was identified as the owner. Id. at 845. In this case, however, we are not dealing with factual errors or omissions contained in a certificate of title; rather we are dealing with the preliminary legal question of whether a tribal title meets the UCC's statutory definition of a "certificate of title." The cited provisions either do or do not bring the tribal title within the UCC definition of a certificate of title. We hold that they do not.

C. The Credit Union Does Not Have a PMSI.

So as to be protected by automatic perfection, the credit union argues that it has a PMSI in consumer goods that was perfected upon attachment. Okla. Stat. Ann. tit. 12A, § 1-9-309(1) A "purchase-money obligation" is defined as "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if

the value is in fact so used." Okla. Stat. tit. 12A, § 1-9-103(a)(2). The credit union argues a close nexus exists between its loan and the debtors' purchase of the vehicle. See Okla. Stat. Ann. tit. 12A, § 1-9-103, cmt. 3 ("The concept of 'purchase money security interest' requires a close nexus between the acquisition of the collateral and the secured obligation."). Specifically, the debtors made no payments on the original loan, the credit union loan amount was for the purchase price of the truck plus a filing fee, and the loan was made slightly more than six weeks after the original loan.

In a non-consumer goods transaction, a PMSI does not lose its status where "the purchase-money obligation has been renewed, refinanced, consolidated, or restructured." Okla. Stat. tit. 12A, § 1-9-103(f)(3). In a consumer goods transaction, a court is to determine the proper rule to apply when a purchase-money obligation has been refinanced, Okla. Stat. tit., 12A, § 1-9-103(h); see In re Billings (Billings v. Avco Colo. Indus. Bank), 838 F.2d 405, 409 (10th Cir. 1988) (rejecting the "automatic transformation" rule); In re Russell, 29 B.R. 270, 274 (Bankr. W.D. Okla. 1983) (same). We think it plain that the credit union loan did not in fact enable the debtors to acquire rights in the truck even under the most liberal view. The credit union is an entirely different lender than the finance company, and the credit union proceeds went to the debtors who then chose to pay off the finance company. The credit union does not have a PMSI and cannot rely on automatic perfection.

- 17 -

D.  The Credit Union Is Not Entitled to Statutory or Equitable Subrogation.

The credit union also argues that statutory subrogation pursuant to Okla. Stat. Ann. tit. 42, § 19(2)[6] or equitable subrogation allow it to prevail.  The courts below held that the credit union lacked an inferior lien on the collateral. Moreover, the BAP noted that the record contained no evidence that the finance company perfected its security interest.  The credit union's argument is that when the debtors signed the note and security agreement, the credit union had a lien on the vehicle, that the proceeds were used to pay off the finance company and discharge the lien, and that perfection is irrelevant.

We reject this argument.  The facts simply do not suggest that the credit union as an inferior lienholder sought to satisfy the claim of the finance company to protect its position in the property.  See Citizens State Bank of Tulsa v. Pittsburg County Broad. Co., 271 P.2d 725, 727 (Okla. 1954).  The credit union did not take an assignment or manifest an intent to step into the shoes of the original lender.  See Mortgage Elec. Registration Sys., Inc. v. United States ex

_____

[6]  That statute provides in pertinent part:

One who has a lien, inferior to another upon the same property, has a right:
. . . .
2. To be subrogated to all the benefits of the superior lien when necessary for the protection of his interests, upon satisfying the claim secured thereby.

Okla. Stat. Ann. tit. 42, § 19.

- 18 -

rel. Internal Revenue Serv., 134 P.3d 913, 916 n.6 (Okla. Civ. App. 2006). Rather, it gave the proceeds to the debtors, and years later claims it intended to be subrogated to the finance company. We agree with the trustee that the statute was not intended to circumvent the PMSI requirements of the UCC–under the credit union's rationale, every payoff of a purchase-money loan by a different lender would be a PMSI, regardless of the steps the subsequent lender took to protect itself.

For similar reasons, equitable subrogation does not apply. Oklahoma has recognized equitable subrogation so a lender who has been deceived or defrauded by a debtor and receives a defective mortgage may be subrogated to a prior valid mortgage which was discharged with the proceeds. See Landis v. State ex rel. Comm'rs of Land Office, 66 P.2d 519, 521-22 (Okla. 1937). The doctrine envisions that the subsequent lender intend to receive equivalent security to that discharged and, when other lienholders will be displaced, there must be some indication that the subsequent lender believed that he would be substituted for the original lender. See Sw. Title & Trust Co. v. Norman Lumber Co., 441 P.2d 430, 433-34 (Okla. 1968); Citizens State Bank of Tulsa, 271 P.2d at 727. These circumstances are not present here.

AFFIRMED.