**Thomas A. NEU, Elizabeth A. Neu, and Wells Fargo Bank, N.A., Appellants–Defendants,**

**v.**

**Brett GIBSON, Appellee–Plaintiff.**

No. 49A02–0811–CV–1031.

Court of Appeals of Indiana.

April 28, 2009.

Rehearing Denied July 13, 2009.

Craig D. Doyle, Mark R. Galliher, Kurt V. Laker, Doyle Legal Corporation, Indianapolis, IN, Attorneys for Appellants.

Sean M. Clapp, Sean M. Clapp, LLC, Fishers, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

It has long been held that "equity will not suffer a wrong without a remedy." *King v. City of Bloomington*, 239 Ind. 548, 159 N.E.2d 563, 564 (1959). The parties in this case are engaged in a dispute regarding the foreclosure of their respective liens upon real estate located on Edgewood Avenue in Indianapolis (real estate). And this appeal follows our ruling in *Gibson v. Neu*, 867 N.E.2d 188 (Ind.Ct.App.2007).

Appellants-defendants Thomas A. Neu, Elizabeth A. Neu (the Neus), and Wells Fargo Bank (Wells Fargo), N.A., (collectively, the appellants) appeal the judgment in favor of appellee-plaintiff Brett Gibson. The appellants argue that the trial court erred in prohibiting them from obtaining a decree of foreclosure on the real estate following the lien that they had obtained pursuant to the doctrine of equitable subrogation, including amounts owed for attorney's fees and interest at the rate set forth in a prior mortgage. Alternatively, the appellants contend that even if they are not entitled to a foreclosure decree, the trial court erred in refusing to grant their request for a sheriff's sale of the real estate.

Gibson cross-appeals, claiming that the appellants' arguments regarding foreclosure, including the amounts purportedly owed for interest and attorney's fees and a proposed sheriff's sale of the real estate, have been waived and/or cannot be presented in light of the law of the case doctrine.

We conclude that the appellants have properly preserved the issues and hold that the trial court properly determined that they were not entitled to a decree of foreclosure pursuant to their equitable subrogation lien. Also, while we find that the trial court properly denied the appellants' claims for interest amounts and attorney's fees under the terms of the prior mortgage that had been extinguished, remand is appropriate for the trial court to calculate the amount of statutory interest to which the appellants may be entitled. Finally, we conclude that the appellants are entitled to proceed with a sheriff's sale of the real estate. Thus, we affirm in part, reverse in part, and remand with instructions and for further proceedings consistent with this opinion.

### FACTS

On September 22, 2004, Gibson sold to John Nowak all of his stock in Cellular Telephone Centers T.H., Inc., for $350,000. Nowak executed a promissory note payable to Gibson in the amount of $350,000. To secure payment of the note, Nowak granted to Gibson a second mortgage on his residence—the real estate—which was recorded on September 30, 2004, in the Marion County Recorder's Office. This mortgage was second to a mortgage that Nowak had granted to Irwin Mortgage Corporation (Irwin Mortgage) in the amount of $506,900, which had been recorded on April 5, 2004.

Unbeknownst to Gibson, Nowak sold the real estate to the Neus on March 11, 2005,

for a net purchase price of $595,391.06. Nowak did not inform Gibson that he was selling the real estate to the Neus. Investors Titlecorp (Investors) acted as the closing agent for the transaction and performed a title search on the real estate. The title search revealed the Irwin Mortgage, but Investors did not find the Gibson–Nowak mortgage.

The Neus used $395,391.06 of their own funds toward the purchase of the home and borrowed $200,000 from Washington Mutual Bank (Washington Mutual) to make up the difference. The Neus executed the mortgage on the real estate in favor of Washington Mutual, which was dated March 11, 2005, and recorded on March 24, 2005. The Neus and Washington Mutual paid $506,016.34 to satisfy the Irwin Mortgage.

Interest accrued under the Irwin Mortgage at the rate of 6.25%. That mortgage included provisions permitting foreclosure in the event of a civil action that could cause forfeiture or impairment of the lender's security interest. The Irwin Mortgage also contained a provision for the collection of attorney's fees incurred in enforcing the lien.

At the closing—in exchange for payment from the appellants—Nowak executed and delivered to the Neus a warranty deed for the real estate and a vendor's affidavit swearing that he had not executed any other mortgages against the real estate. Nowak did not make any payments that were due in June 2005 or after. Thus, neither Nowak's note nor the Gibson–Nowak mortgage were paid and satisfied in connection with the sale.

On June 3, 2005, Gibson filed a complaint against Nowak, the Neus, and Washington Mutual, for a judgment on the promissory note and to foreclose on the real estate. The complaint alleged that

5. [T]he Plaintiff is entitled to recover from the Defendant John Nowak the principal balance of . . . $336,148.93 plus interest at the rate of . . . 6.5% per annum plus reasonable attorney fees and its cost in this action.

6. That on March 11, 2005, Defendant John Nowak sold said real estate in derogation of Plaintiff's rights to [the Neus] . . . as shown by Warranty Deed dated March 11, 2005 and recorded March 25, 2005

7. That Washington Mutual Bank holds a mortgage executed by [the Neus] on March 11, 2005 and recorded on March 24, 2005, . . . which mortgage is second, subsequent and inferior to Plaintiff's mortgage.

8. That the Plaintiff's mortgage is a first lien upon the real estate described in said mortgage, and Plaintiff is entitled to foreclose this mortgage.

9. That pursuant to the agreements of said mortgage the Plaintiff elects to accelerate the entire amount due on this mortgage and the same is now declared in default.

10. That Plaintiff's mortgage is a first lien on the real estate described herein, prior to and superior to all the other claims of liens, if any, of the Defendants, and each of them and each an all of the claims of each and all of the persons claiming by, through or under each of all of the Defendants herein.

Appellants' App. p. 32.

In October 2005, Nowak filed for bankruptcy, and the promissory note and the mortgage remained unpaid. At some point, Wells Fargo accepted an assignment of the Washington Mutual loan and became the holder of the Neus' mortgage on the real estate.

On July 21, 2006, the trial court approved an entry of summary judgment in

favor of the Neus and their lender, determining that Gibson was required to release his mortgage and that the Neus and their lender had a lien in the amount of $506,016.34 on the real estate superior to Gibson's under the doctrine of equitable subrogation. Gibson appealed, and this court reversed the trial court's determination that Gibson was required to release his mortgage. *Gibson*, 867 N.E.2d at 193. Specifically, we observed that

> We need not address whether Nowak had "defaulted in his obligation" because he was not current in his payments at the time he sold the property to the Neus on March 11, 2005, and was consistently behind in his payments during the following months until he stopped making payments altogether after June 17, 2005. As a result, Gibson was not required to release the Gibson mortgage.

*Id.* at 196. We then affirmed the determination that the Neus and Washington Mutual were entitled to equitable subrogation over Gibson's mortgage. *Id.* at 202. In so concluding, we observed that

> The classic formulation of the doctrine of equitable subrogation in the case of a purchaser of a note and mortgage for value is that the "purchaser's right of subrogation to the mortgage he or she discharged includes its priority over junior liens of which he or she did not have actual knowledge, [and] where he or she was not culpably negligent in failing to learn of the junior lien." *Bank of New York v. Nally*, 820 N.E.2d 644 (Ind. 2005). Under this formulation, the Neus and Washington Mutual would be entitled to equitable subrogation if they discharged the entire Irwin mortgage, did not have actual knowledge of Gibson's mortgage, and were not culpably negligent in failing to learn of Gibson's mortgage. However, the Indiana Su-

preme Court revised this formulation in *Nally*.

Here, subrogation would place Gibson in the same position as he was in prior to the sale to the Neus. When he placed the mortgage on the property, Gibson had a mortgage second in priority to Irwin's $506,016.34 mortgage. Allowing the Neus and Washington Mutual to be equitably subrogated to the extent of the Irwin mortgage would place Gibson in the same position as before the sale, and he would not be prejudiced. In fact, denying the Neus and Washington Mutual equitable subrogation would result in a windfall to Gibson.

Gibson argues that the Neus and Washington Mutual would not be prejudiced by awarding his mortgage first priority because they had title insurance. *See, e.g., Wilshire Servicing Corp. v. Timber Ridge Partnership*, 743 N.E.2d 1173, 1179–1180 (Ind.Ct.App.2001) (holding that the fact that "a title insurer was paid to perform precisely the function that would have revealed the junior judgment lien is a factor within the purview of a determination of the equities"). As it relates to Washington Mutual, this issue is addressed in Ind.Code § 32–29–1–11, which provides:

> (d) Except for those instances involving liens defined in IC 32–28–3–1 [mechanic's liens], a mortgagee seeking equitable subrogation with respect to a lien may not be denied equitable subrogation solely because:
>
> (1) the mortgagee:
>
> (A) is engaged in the business of lending; and
>
> (B) had constructive notice of the intervening lien over which the mortgagee seeks to assert priority;
>
> (2) the lien for which the mortgagee seeks to be subrogated was released; or

(3) the mortgagee obtained a title insurance policy.

(e) Subsection (d) does not apply to a municipal sewer lien under IC 36–9–23 or a mechanic's lien under IC 32–28–3–1.

Thus, Washington Mutual could not be denied equitable subrogation simply because it obtained title insurance. Gibson argues, and the Neus concede, that this statute would apply to Washington Mutual as a mortgagee but not to the Neus as purchasers. However, the Neus argue that the statute "reflects a broad policy determination that neither buyers nor lenders should be denied equitable subrogation simply because they obtained title insurance." Appellee's Brief at 22. Given the "liberal application" of equitable subrogation, we agree. *Nally,* 820 N.E.2d at 652.

We conclude that the trial court did not err by granting the Neus and Washington Mutual equitable subrogation to the extent of the Irwin mortgage. *Id.* at 202–03.

Following the appeal, on October 19, 2007, Washington Mutual filed a motion to substitute, having sold its mortgage interest to Wells Fargo. The trial court granted Washington Mutual's motion, thereby substituting Wells Fargo as the real party in interest. The Neus and Wells Fargo subsequently filed a Motion to Establish Lien Amount and Sell the Real Estate, requesting that the trial court award them interest and attorney's fees in addition to the lien that they had obtained through equitable subrogation and order a sheriff's sale of the real estate to satisfy the liens in their proper order of priority.

On November 21, 2007, the trial court entered an order granting judgment to Gibson in the amount of $380,438.57, foreclosing Gibson's mortgage, reiterating its earlier ruling that the appellants' lien amount was $506,016.34, and denying the appellants' request for a sheriff's sale of the real estate. The trial court declined to order a sale of the real estate for the reason that "the Court cannot order a foreclosure sale when there is no foreclosure." Appellant's App. p. 13–16. However, the trial court determined that Gibson, based on his foreclosure judgment, could praecipe for a sheriff's sale of the real estate. The order also determined how the proceeds of the sale should be applied.

Thereafter, the trial court granted the appellants' request to file a counterclaim and cross-claim seeking foreclosure of the lien. The appellants also filed a motion to correct error, requesting the trial court to correct its alleged error on the issue of their purported right to force a sheriff's sale of the real estate and to clarify that the order was interlocutory. On March 24, 2008, the trial court denied that motion and amended its previous order confirming that it was not a final appealable order with respect to various issues that it had decided.

On May 27, 2008, the appellants filed a motion for summary judgment and supporting documents seeking a decree of foreclosure with regard to their counterclaim and cross-claim. In support of the motion for summary judgment, the appellants alleged that

It is the law of this case that Wells Fargo and the Neus are equitably subrogated to the mortgage of Irwin Mortgage Corporation, the subject of which is the real property.... Paragraph 11 of the mortgage provides in pertinent part that:

5. Borrower shall be in default if any action or proceeding, whether civil or criminal is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's Interest in the Property or rights under this Security Instrument.

. . .

If Gibson acts to expose the property to sale, Wells Fargo and the Neus will be prejudiced if they cannot bid the amount of their equitable interest. Likewise, the interest of Wells Fargo and the Neus would be impaired if they could not receive proceeds from a judicial sale, in the event that they are not the successful bidders.

Wells Fargo and the Neus therefore are entitled to declare a default. More than . . . 30 days have elapsed since notice of default was provided to John L. Nowak. Gibson's lien has not been removed, nor has his foreclosure been dismissed. According to paragraph 22 of the Irwin mortgage, Wells Fargo and the Neus are entitled to accelerate and foreclose. . . .

And Wells Fargo's and the Neus's [sic] lien should be foreclosed as part of the Court's equitable administration of title. The real property should not be sent to sheriff sale subject to the Neu/Wells Fargo lien.

Appellants' App. p. 311–13.

Gibson opposed the appellants' motion and filed a cross-motion for summary judgment. Gibson claimed that he was entitled to judgment as a matter of law because the Neus were not in default and, therefore, no foreclosure could be ordered. Gibson also alleged that he was entitled to summary judgment because "neither Wells Fargo nor [the] Neus can foreclose any rights under the Irwin Mortgage because it was discharged when Nowak paid it in full in connection with the sale to [the] Neus." *Id.* at 322. Gibson further argued that because the doctrine of equitable subrogation merely establishes lien priority, the appellants had no right to foreclose the Irwin Mortgage due to a default under that mortgage. Finally, Gibson claimed that "there is no authority permitting Neus to foreclose an equitable subrogation lien against themselves." *Id.* at 322. Following a hearing, the trial court denied the appellants' motion for summary judgment and granted Gibson's cross-motion on October 22, 2008.

Thereafter, the appellants filed a request for the trial court to clarify that its order on the motion to Establish the Lien Amount and Sell Real Estate that was entered on November 21, 2007, and the order denying the appellants' motion for summary judgment and granting Gibson's motion for summary judgment, were final orders. In response, the trial court made the following "entry of finality" on November 13, 2008:

That the Motion to establish lien amount and sell real estate filed by the Neus and Wells Fargo on October 19, 2007 was disposed of by the Court's Order on Motion to Establish Lien Amount and Sell Real Estate dated November 21, 2007.

That the Motion for entry of summary judgment filed by the Neus and Wells Fargo on May 27, 2008 and the cross-motion for summary judgment on August 25, 2008 by Plaintiff Brett Gibson were each and both disposed of by the Court's entry of October 22, 2008.

There is no just reason for delay; the entry which disposed of the Motion to establish lien amount and sell real estate filed by the Neus and Wells Fargo is a final judgment as provided by Trial rule 54(B). The entry granting the cross-motion for summary judgment for Plaintiff Brett Gibson, and denying the Motion for summary judgment filed by the Neus and Wells Fargo is a final judgment as provided by Trial Rule 54(B).

*Id.* at 21–22. This appeal follows.

## DISCUSSION AND DECISION

### I. Standard of Review

On appeal from a grant or denial of summary judgment, our standard of re-

view is identical to that of the trial court: whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Winchell v. Guy,* 857 N.E.2d 1024, 1026 (Ind.Ct.App.2006); *see also Ind.* Trial Rule 56(C). Appellate review of a summary judgment motion is limited to those materials designated to the trial court. *Pond v. McNellis,* 845 N.E.2d 1043, 1053 (Ind.Ct.App.2006). All facts and reasonable inferences drawn therefrom are construed in favor of the nonmovant. *Id.* Further, the fact that the parties made cross-motions for summary judgment does not alter our standard of review. Rather, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

■ Finally, we note that the facts presented in this case are not in dispute. Although rulings on interlocutory orders and on motions to correct error are usually reviewable under an abuse of discretion standard, cases are reviewed de novo when the issue on appeal is a pure question of law. *In re: P.F.,* 849 N.E.2d 1220, 1223–24 (Ind.Ct.App.2006).

## II. Gibson's Cross–Appeal

### A. Timeliness of Appeal

■ Before proceeding to the appellants' arguments, we first address Gibson's cross-appeal, where he initially claims that the appellants' challenge to the trial court's order of November 21, 2007—regarding the lien amount and the sale of real estate—is untimely and barred by the law of the case doctrine. More specifically, Gibson argues that the appellants' contentions that the amount of their subrogation lien should be modified to include interest and attorney's fees, and the assertion that the real estate should be subject to a sheriff's sale, have not been appealed in a timely fashion.

■ In support of Gibson's contention that the appeal of the order on the Motion to Establish Lien Amount and Sell Real Estate was untimely, he directs us to *Trinity Baptist Church v. Howard,* 869 N.E.2d 1225 (Ind.Ct.App.2007), trans. denied, where it was determined that when a notice of appeal is not filed in a timely fashion, the "right to appeal shall be forfeited." *Id.* at 1227. However, it was also held in *Trinity* that a claimed error in an interlocutory order is not waived for failure to take an interlocutory appeal. *Id.* If a notice of appeal from a final judgment is filed, it is also timely as to the appeal of interlocutory orders entered before the final judgment. *Id.*

In light of this language, the crucial question before us in this case is whether the trial court's order of November 21, 2007, is final or interlocutory. The trial court specifically declared that the November 21 order was not a "final order" in its March 24, 2008, "Order Amending Entry of November 21, 2007 as Interlocutory Order." Appellants' App. p. 17. Because the November 17, 2007, order was interlocutory at the time of entry and was not certified by the trial court for appeal, the appellants could not have appealed at the time.

Also instructive on this issue is this court's opinion in *Young v. Estate of Sweeney,* 808 N.E.2d 1217 (Ind.Ct.App.2004). In *Young,* there was an objection to the amount of attorney's fees that were included in a motion for the court's approval of a settlement in a wrongful death case. The settlement was approved as part of an interlocutory order. Young filed a motion to correct error, which was denied. Young then attempted to appeal the denial of the motion to correct error, and, in analyzing the provisions of Indiana Trial Rule 59, this court stated, "nowhere in that Rule is

it suggested that a motion to correct error is proper following an interlocutory order." *Id.* at 1221 n. 6. Therefore, Gibson's suggestion that the filing of a motion to correct error as to an interlocutory order somehow "finalizes" the particular issues decided in that interlocutory order or otherwise converts an interlocutory order into a final order, is misplaced. Again, the trial court declared that the November 21, 2007, order was final and appealable on November 13, 2008, in its "Entry of Finality." Appellants' App. p. 21. Accordingly, the appellants filed their notice of appeal five days later on November 18, 2008. As a result, Gibson's cross-appeal with regard to this claim fails.

## B. Law of the Case

In a related issue, Gibson asserts that the appellants' claims that the equitable subrogation lien should have included interest and attorney's fees are barred by the law of the case doctrine in light of this court's decision in the prior appeal. Gibson contends that because the appellants did not assert their entitlement to interest and attorney's fees after the motion that they filed on October 19, 2007, which the trial court subsequently denied on November 21, 2007, the issue cannot be raised at this point in the proceedings. Because the appellants did not raise the issue in the motion to correct error, Gibson asserts that the time for appeal commenced to run on November 21, 2007, and the appellants should have filed their notice of appeal no later than December 21, 2007. As a result, Gibson asserts that the appellants failed to preserve the issue.

Notwithstanding these contentions, we note that the law of the case doctrine is "a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal." *Hanson v. Valma M. Hanson Revocable*

*Trust,* 855 N.E.2d 655, 662 (Ind.Ct.App. 2006). More particularly:

> To invoke the law of the case doctrine, the matters decided in the prior appeal clearly must appear to be the only possible construction of an opinion, and questions not conclusively decided in the prior appeal do not become the law of the case. Statements that are not necessary in the determination of the questions presented are dicta, are not binding, and do not become the law of the case.

*Id.* at 662.

In the prior appeal, the question was whether the appellants were entitled to a lien in the first instance. Although the amount of the lien was established, the parties did not argue the issues of interest and attorney's fees, nor did this court's opinion discuss those issues. Thus, contrary to Gibson's claims, we cannot say that we "conclusively decided" an issue that was not resolved by the trial court prior to the first appeal, argued before this court, or discussed in the prior opinion. *Hanson,* 855 N.E.2d at 662. Finally, the reference in *Gibson* to the dollar amount of the appellants' lien was not necessary to the determination of the issues presented. Therefore, the law of the case doctrine does not preclude the appellants from litigating the issues of interest and attorney's fees regarding the lien.

## C. Waiver—Sheriff's Sale

Finally, Gibson asserts on cross-appeal that the appellants have waived the argument regarding the trial court's ability to order a sheriff's sale. Specifically, Gibson claims that although the appellants raised the issue in the motion to correct error, they did not present those arguments again after the trial court rejected them in the November 21, 2007, order on the Motion to Establish the Lien Amount and Sell Real Estate.

Gibson is apparently arguing that the appellants were obligated to challenge the trial court's order of November 21, 2007, in all subsequent pleadings presented to the trial court. However, Gibson directs us to no authority—and we have found none—for the proposition that a party is under an obligation to question a trial court's prior rulings in subsequently filed pleadings. Thus, Gibson's claim fails and we conclude that the appellants did not waive the issue of their alleged entitlement to a sheriff's sale of the real estate.

### III. The Appellants' Claims

#### A. Foreclosure, Interest and Attorney's Fees

The appellants contend that the trial court erred in determining that they may not foreclose on the equitable subrogation lien that was granted in their favor and recover interest and attorney's fees pursuant to the Irwin Mortgage. The appellants maintain that if they are not permitted to obtain a foreclose decree and recover interest and attorney's fees under the terms of the prior Irwin Mortgage, their lien would be worthless and Gibson will receive an "unearned windfall" that equitable subrogation was designed to prevent. Appellants' Br. p. 5.

▮▮ In resolving this issue, we initially observe that subrogation arises from the discharge of a debt and permits the party paying off a creditor to succeed to the creditor's rights in relation to the debt. *Bank of New York v. Nally*, 820 N.E.2d 644, 651 (Ind.2005). It arises by operation of law, "that is to say it is created by the legal consequences of the acts and relationships of the parties, and thus is a legal fiction." *Id.* (quoting 83 C.J.S. Subrogation § 2 at 499 (2000)). Additionally, "one who acquires or succeeds to rights, claims or securities through equitable subrogation 'steps into the shoes' of the subrogor...."

*Id.* at 652. Equity and fairness are factors in determining whether to apply equitable subrogation, and the doctrine requires the subrogee to discharge the entire debt held by the original obligor. *Id.* at 652, 654.

As our Supreme Court observed in *Nally*, the doctrine of equitable subrogation allows one paying the debt of another to succeed to the priority of the debt paid:

> Perhaps the case occurring most frequently is that in which the payor [i.e. the party asserting a right to equitable subrogation] is actually given a mortgage on the real estate, but in the absence of subrogation it would be subordinate to some intervening interest, such as a junior lien. Here subrogation is entirely appropriate, and by virtue of it the payor has the priority of the original mortgage that was discharged. This priority is often of critical importance, since it will place the payor's security in a position superior to intervening liens and other interests in the real estate. The holders of such intervening interests can hardly complain of this result, for it does not harm them; their position is not materially prejudiced, but is simply unchanged.

820 N.E.2d at 653 (quoting *Restatement (Third) of Prop.: Mortgages* § 7.6 cmt. e). The trial court recognized this rationale in accordance with its entry in 2006:

> this Court finds ... that the Defendants would be entitled to assume the first lien position of Irwin Mortgage Corporation, in the amount of $506,016.34, under the doctrine of equitable subrogation. The Gibson Mortgage was always junior to the Irwin mortgage, and no harm would come to Gibson's lien position by the Neus (and their lender Washington Mutual) attaining first lien status.

Appellants' App. p. 181.

Here, the appellants claim that the trial court should have permitted them to en-

force their lien through a foreclosure decree because their remedy under equitable subrogation is not restricted to lien priority. As our Supreme Court observed in *Nally,* the payor's "right of subrogation to the mortgage he or she discharged *includes* its priority over junior liens." 820 N.E.2d at 651 (emphasis added). In light of this language, we cannot agree with Gibson's assertion that a subrogee obtains *only* the right of priority over junior liens.

However, the appellants have failed to show that Irwin has any right to foreclose against Nowak. Indeed, Nowak is not in default on the Irwin Mortgage because it is undisputed that the mortgage was paid in full and discharged. Thus, any default under the Irwin Mortgage by Nowak was cured when Nowak repaid the loan from Irwin in full in connection with the sale to the Neus. Hence, Wells Fargo and the Neus have no interest arising from the Irwin Mortgage to foreclose. For a mortgage lien to exist, there must be some obligation for the lien to secure. *See Egbert v. Egbert,* 235 Ind. 405, 421, 132 N.E.2d 910, 918 (1956) (holding that the mortgage was but a security for the note, and any act that discharged the latter discharged the former).

Additionally, the appellants have presented no authority for the proposition that Wells Fargo may exercise its right to foreclose the Neus' mortgage. Indiana Code section 32–30–10–3 provides that "[i]f a mortgagor defaults in the performance of any condition contained in a mortgage, the mortgagee or the mortgagee's assigns may proceed in the circuit court of the county where the real estate is located to foreclose the equity of redemption contained in the mortgage." Here, the undisputed evidence established that the Neus have consistently paid their mortgage indebtedness to Wells Fargo and its predecessor. Wells Fargo makes no claim that it is going to foreclose on the Neus' mortgage and, in fact, the amount owed on the Neus' mortgage has been reduced rather than increased.

Even more compelling, as dictated by the result in *Nally,* Wells Fargo would not be entitled to interest at any rate higher than what the Irwin Mortgage accrued. *See Nally,* 820 N.E.2d at 654 (permitting interest only at a lower rate of 13.250% contained in the prior mortgage rather than the higher rate set forth in the replacement mortgage that was equitably subrogated). Indeed, if Wells Fargo was permitted to collect additional interest, Wells Fargo would reap a substantial windfall because it would collect interest from the Neus and it would accrue additional interest as against Gibson's mortgage. Thus, Gibson would not be in the same place he was when the Irwin Mortgage was satisfied. Adding any amount to the appellants' subrogation lien would be unfair to Gibson—particularly because the Neus have paid their mortgage indebtedness to Wells Fargo and its predecessor, and the amount owed on the Neus' mortgage has been reduced.

Presumably, Wells Fargo has already received interest that it is now claiming should be included in its lien, and the record is devoid of any evidence as to the rate of interest accruing on the Neus' debt to Wells Fargo and whether it is more than the interest that was chargeable under the Irwin Mortgage. Finally, we note that the Neus had no expectation of receiving interest and attorney's fees when they bought the real estate, and awarding them those amounts would only reduce the value of Gibson's mortgage interest.

Although we have found no Indiana case directly on point, we note that the Supreme Court of Utah observed years ago that when a new lender pays off a prior debt of a seller on behalf of a buyer, the

equitable subrogation lien is security for the new debt, not security for the old debt. *Martin v. Hickenlooper*, 90 Utah 150, 59 P.2d 1139, 1153 (1936). More particularly, the *Martin* court recognized that

By what is said in this opinion, it appears abundantly clear that equity will so adopt the doctrine of subrogation to work out justice in the situation but not to do more than justice calls for. The cases above examined speak of being subrogated to the "lien." Where the lender is dealing with the original mortgagor, subrogation to a released lien by considering it restored completely adjusts the matter, because the same person who was the debtor of the old lienholder is the debtor of the lender-the new lienholder. But where the mortgagor after going on a note has parted with the mortgaged property and it goes into the hands of another-in this case, the Fritsch Loan & Trust Company-and such other becomes the lender's debtor, such lender can be subrogated to the lien of the old creditor only as security for his debt owing by the new title holder, and not as security for the debt owing by the original mortgagor who never had the debtor relationship with him.

*Id.* at 1152–53.

When applying the rationale set forth in *Martin*, Wells Fargo, as the new lender, is subrogated to the lien of the Irwin Mortgage only as security for Wells Fargo's debt owed by the Neus and not as security for the debt owed by Nowak, with whom Wells Fargo never had the debtor relationship. Thus, the doctrine of equitable subrogation as applied in this circumstance does not permit the Neus or Wells Fargo to succeed to all of the legal rights and responsibilities of the Irwin Mortgage as against Nowak. For all of these reasons, we conclude that the trial court properly determined that the Neus were not entitled to interest and attorney's fees as set forth in the Irwin Mortgage. However, even though the Neus may not collect interest in accordance with the terms of the prior mortgage that had been extinguished, we reject Gibson's contention that the Neus are precluded from recovering *any* interest amounts merely because we did not address that issue in our prior appeal. While it was established that the Neus paid $506,016.34 in satisfaction of the Irwin Mortgage, we believe that remand is appropriate in this instance for the trial court to calculate any interest to which the Neus may be entitled pursuant to the statutory rate from the date of their payoff of the Irwin Mortgage. In so holding, Gibson will be less likely to have reaped the benefits of the Neus' payments on the mortgage.

### B. Sheriff's Sale

■ Although we have concluded that the appellants were not entitled to a foreclosure decree and may not recover attorney's fees and interest under the Irwin Mortgage, they argue in the alternative that the trial court should have permitted them to request a sheriff's sale of the real estate. The appellants maintain that they should be permitted to do so because a sheriff's sale may be requested by any person who is entitled to enforce the judgment.

In general, we note that Indiana Code section 32–30–2–20 provides that

An action to determine and quiet a question of title to property may be brought by a plaintiff who:

(1) is in possession of the property;

(2) is out of possession of the property; or

(3) has a remainder or reversion interest in the property; against a defendant who claims title to or an interest in the real property with a claim that is

adverse to the plaintiff, even if the defendant is not in possession of the property.

Moreover, it has been held that the owner of an equitable title may sue to have his title quieted. *Stout v. Duncan*, 87 Ind. 383 (1882).

In support of their proposition, the appellants direct us to Indiana Code section 32–29–7–3, which provides that

> (b) A judgment and decree in a proceeding to foreclose a mortgage that is entered by a court having jurisdiction may be filed with the clerk in any county as provided in IC 33–32–3–2. After the period set forth in subsection (a) expires, *a person who may enforce the judgment and decree may file a praecipe with the clerk in any county where the judgment and decree is filed, and the clerk shall promptly issue and certify to the sheriff of that county a copy of the judgment and decree under the seal of the court.*
> (c) Upon receiving a certified judgment under subsection (b), the sheriff shall, subject to section 4 of this chapter, sell the mortgaged premises or as much of the mortgaged premises as necessary to satisfy the judgment, interest, and costs at public auction at the office of the sheriff or at another location that is reasonably likely to attract higher competitive bids . . . .

(Emphasis added). Moreover, Indiana Code section 32–30–12–2 states that in a foreclosure action, "the sale of the mortgaged property *shall* be ordered in all cases." (Emphasis added). Finally, Indiana Code section 32–30–10–8 states that the court's "order of sale and judgment *shall* ... be issued by the clerk to the sheriff" (emphasis added). Also, pursuant to subsection (b) of that statute, after receiving the order from the clerk, "the sheriff *shall* proceed to sell the mortgaged premises." *Id.* (Emphasis added).

When construing statutes, our aim is to ascertain and give effect to the intention of the legislature. *Jackson v. City of Jeffersonville*, 771 N.E.2d 703, 709 (Ind.Ct.App.2002). With regard to legislative intent, we presume that words appearing in the statute were intended to have meaning, and reviewing courts endeavor to give those works their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Id.* Moreover, it is just as important "to recognize what the statute does not say as it is to recognize what it does say." *Bailey v. Holliday*, 806 N.E.2d 6, 10 (Ind.Ct.App.2004).

As noted above, Indiana Code section 32–29–7–3 provides that "a person who may enforce the judgment" may also request a sheriff's sale. The General Assembly did not use the phrases "the holder of the lien foreclosed" or "the prevailing party" when describing who may request a sale. However, Indiana Code section 32–30–10–6 states that the "prevailing party" was required to record a mortgage release when its judgment was paid before a sheriff's sale. That said, it appears to us that if the legislature desired to permit only the prevailing party to request a sale, it could have done so. And given the nature of judgments in foreclosure proceedings, which often adjudicate the rights of numerous parties with interest in the real estate—including multiple lienholders and other parties—the legislature chose more general language.

Here, Gibson and the appellants both obtained enforceable rights by way of the previous judgment. And the trial court's order of November 21, 2007, which forecloses Gibson's mortgage, authorizes the sale of the real estate. Appellants' App. p. 13–14. The order also determines that the appellants are entitled to the first proceeds of the sale. *Id.* at 14. Although the foreclosure decree should have contained a

provision simply ordering the sale of the real estate, it merely granted Gibson the option to request a sale, which Gibson does not intend to exercise. *Id.* at 14. Hence, the appellants should be permitted to request a sale in order to enforce their interest.

In our view, the legislature—in enacting the above statutes—desired to prevent situations occurring in circumstances such as these, where title to real property is left in limbo by a mortgagee who intends to take no action. Thus, we conclude that the trial court erred in refusing to allow the appellants to enforce their lien by way of foreclosure, and they should be able to request a sheriff's sale of the real estate in order to recover the value of their lien.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions for the calculation of statutory interest to which the Neus may be entitled, and for further proceedings consistent with this opinion.

BARNES, J., and CRONE, J., concur.